A00A0778, A00A0779. DAVIS v. EMMIS PUBLISHING
CORPORATION et al.; and vice versa.
(536 SE2d 809)

BLACKBURN, Presiding Judge.

In this libel action, Dave Davis appeals the trial court's grant of summary judgment to defendants Emmis Publishing Corporation d/b/a Atlanta Magazine and Scott Freeman. Davis contends that the trial court erred by finding that the complaint failed to state a claim for invasion of privacy (intrusion upon seclusion) and by finding that his claims for defamation and false light invasion of privacy were barred by the statute of limitation. We affirm the trial court's ruling on these issues.

In a cross-appeal, Emmis and Freeman appeal the trial court's determination that the failure of Davis to timely file verifications of the complaint as required by Georgia's Anti-Strategic Litigation Against Public Participation (SLAPP) Statute, OCGA § 9-11-11.1, was an amendable defect. While the trial court erred in this ruling, this procedural issue is rendered moot by the proper grant of summary judgment to defendants.

These cases arise out of an article written by Freeman entitled "Buckhead Burning" and published in the December 1997 issue of Atlanta Magazine, but which was mailed to subscribers in November 1997. The article concerned the death of a Buckhead resident and the subsequent murder investigation. Davis' son, Scott Davis, was arrested for the murder. Davis, a forensic psychiatrist, alleges that the article asserts that he called in favors from the Fulton County prosecutors and stalled the investigation to prevent his son's prosecution. He further alleges that the article accuses him of obstructing justice and interfering with a murder investigation.

On December 1, 1998, Davis filed the original complaint asserting claims for libel, false light invasion of privacy, and tortious interference with business relations. The defendants timely answered on January 13, 1999, raising as defenses that the complaint failed to state claims upon which relief could be granted; that the complaint failed to comply with OCGA § 9-11-11.1; and that the libel and false light invasion of privacy claims were barred by the statute of limita-

tion. Thereafter, the defendants filed a motion to dismiss. On March 10, 1999, almost two months after the defendants raised the lack of verifications of plaintiff's complaint in the answer, Davis filed an amendment to the complaint adding a claim for invasion of privacy (intrusion upon seclusion) and for intentional infliction of emotional distress. Additionally, Davis attached verifications by him and his counsel as required by OCGA § 9-11-11.1.

After a hearing on the motions to dismiss, the trial court found that: (1) the Georgia Anti-SLAPP Statute, OCGA § 9-11-11.1, did apply in this case; (2) Davis' failure to verify his complaint as required by OCGA § 9-11-11.1, was an amendable defect; (3) the libel and false light invasion of privacy claims were time barred; and (4) Davis had failed to state a claim for invasion of privacy (intrusion upon seclusion), tortious interference with business relations, or intentional infliction of emotional distress. The motions to dismiss were converted to motions for summary judgment pursuant to the extent that the trial court considered evidence outside the pleadings.

*Case No. A00A0778*

1. With respect to the trial court's finding that the claims of defamation and false light invasion of privacy were barred by the statute of limitation, Davis' sole contention on appeal is that the trial court erred in so ruling because he was prohibited from engaging in discovery by the stay provisions of the anti-SLAPP statute, OCGA § 9-11-11.1. Davis argues that because of his inability to conduct discovery, he was unable to counter the affidavit filed by Emmis and Freeman which established the publication of the article in November 1997. For the purpose of analysis of this enumeration of error, we will assume, but not decide, the applicability of the anti-SLAPP statute to this case.

OCGA § 9-11-11.1 (d) provides, "[a]ll discovery . . . in the action shall be stayed upon the filing of a motion to dismiss or a motion to strike made pursuant to subsection (b) of this Code section." In this case, Emmis and Freeman did file motions to dismiss pursuant to subsection (b), thus triggering a stay. However, the statute offers the opportunity for relief from such a stay: "The court, on noticed motion and for good cause shown, may order that specified discovery or other hearings or motions be conducted notwithstanding this subsection." Thus, Davis could have sought the aid of the trial court to lift the stay for the limited purpose of conducting necessary discovery, which he failed to do. He cannot now raise this issue on appeal where he has failed to avail himself of this remedy in the trial court.

Emmis and Freeman presented uncontradicted evidence that the subject article was published in November 1997. Consequently,

Davis' claims for defamation and false light invasion of privacy were time barred, and the trial court properly granted summary judgment as to said claims. OCGA § 9-3-33.

2. In addition to his claim for false light invasion of privacy, Davis contends that he alleged a claim for invasion of privacy by intrusion upon his seclusion or solitude. The trial court properly determined that the allegations of the complaint do not support such a claim.

"In reviewing a trial court's order dismissing a complaint for failure to state a claim, [the appellate] court construes the pleadings in the light most favorable to the losing party with the doubts resolved in [that party's] favor." *Coleman v. Coleman*, 265 Ga. 568, 569 (1) (459 SE2d 166) (1995). Davis has not alleged or shown that he was subjected to "a physical intrusion analogous to a trespass, as would be required to recover for an intrusion upon seclusion. *Kobeck v. Nabisco, Inc.*, 166 Ga. App. 652, 654 (305 SE2d 183) (1983)." *Cox Communications v. Lowe*, 173 Ga. App. 812, 814 (2) (328 SE2d 384) (1985); *Cabaniss v. Hipsley*, 114 Ga. App. 367 (1) (151 SE2d 496) (1966).

### Case No. A00A0779

3. Emmis and Freeman enumerate as error the trial court's holding that Davis' failure to verify his original complaint as required by OCGA § 9-11-11.1 was an amendable defect.

If Davis' claim fell within the scope of the anti-SLAPP statute, it was clearly subject to the procedural requirements thereof:

> To prevent such abusive litigation, the legislature imposed several procedural safeguards. Any [such] complaint . . . must be accompanied by a verification, based on belief formed after reasonable inquiry, that the suit is well grounded in fact and law or represents a good-faith argument for the extension of existing law. OCGA § 9-11-11.1 (b). The plaintiff and her counsel must also verify the act forming the basis of the suit is not a "privileged communication" under OCGA § 51-5-7, and that the suit is not filed for any improper purpose such as to suppress a person's right of free speech or right to petition government. OCGA § 9-11-11.1 (b).

(Punctuation omitted.) *Providence Constr. Co. v. Bauer*, 229 Ga. App. 679, 680 (1) (494 SE2d 527) (1997).

The statute further provides: "If the claim is not verified as required by this subsection, it shall be stricken unless it is verified within ten days after the omission is called to the attention of the

party asserting the claim." OCGA § 9-11-11.1 (b).

In interpreting the statute, "we must first look to the statute's literal meaning, and if the language is plain and does not lead to any absurd or impracticable consequences, we will simply construe the statute according to its terms without conducting further inquiry." *World Trade Business v. Amit, Inc.*, 239 Ga. App. 383, 385 (1) (521 SE2d 40) (1999). Generally, the failure to verify a complaint is an amendable defect, and a reasonable time is allowed for a defective pleading to be amended. See *Harvard v. Walton*, 243 Ga. 860 (1) (257 SE2d 280) (1979); *Wall v. Mills*, 126 Ga. App. 149 (1) (190 SE2d 146) (1972). However, the anti-SLAPP statute, by its own terms, sets ten days as a reasonable time to allow for the late filing of the verifications: "If the claim is not verified as required by this subsection, it shall be stricken *unless it is verified within ten days* after the omission is called to the attention of the party asserting the claim." (Emphasis supplied.) OCGA § 9-11-11.1 (b). Compare this express language with other Code sections which set forth a verification requirement but set no time limit for late filing: OCGA §§ 19-5-5; 23-3-22; 23-3-62; 23-3-91.

In this case, it is undisputed that Davis failed to file the verifications with his complaint and that the omission was raised by the defendants in their answer. It is also undisputed that Davis filed the verifications with his amended complaint more than ten days (approximately two months) after the failure to file was first brought to his attention. We are bound to follow the express language of the statute. Applying that language, Davis was not free to amend the complaint after the ten-day period for the remedy of such failure had already expired.

Furthermore, the statute explicitly mandates that the claim "shall be stricken" if the verification is not filed timely. " 'Shall' ordinarily denotes command and not permission." *Ring v. Williams*, 192 Ga. App. 329, 330 (2) (384 SE2d 914) (1989). Thus, the trial court erred in holding that Davis' failure to verify his complaint as required by law was an amendable defect.

4. It is unnecessary to reach the applicability of the anti-SLAPP statute, OCGA § 9-11-11.1, to this case for several reasons. The direct issue of its applicability has not been expressly raised by either party on appeal. See *Post-Tensioned Constr. v. VSL Corp.*, 143 Ga. App. 148 (237 SE2d 618) (1977). Further, even if said statute did apply, it would not change the results in this case, as under this holding, Davis' claim would be stricken for failure to comply with the verification requirements thereof. Also, as we have affirmed the trial court's grant of summary judgment to Emmis and Freeman, the applicability of OCGA § 9-11-11.1, a statute which simply provides procedural safeguards at the initiation of certain litigation, Emmis and Free-

man's enumeration of error is rendered moot.

*Judgment affirmed in Case No. A00A0778. Appeal dismissed as moot in Case No. A00A0779. Phipps, J., concurs. Eldridge, J., concurs specially.*

ELDRIDGE, Judge, concurring specially.

While I fully concur in the opinion, I write to clarify that OCGA § 9-11-11.1, the anti-SLAPP statute, had no application to this case and that such statute must further only the intent of the General Assembly by statutory construction. OCGA § 1-3-1 (a); *City of Roswell v. City of Atlanta*, 261 Ga. 657 (1) (410 SE2d 28) (1991). Where the meaning of a statute is clear, plain, and unambiguous, the courts must construe it according to its terms. *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981); *Atlanta &c. R. Co. v. Wise*, 190 Ga. 254, 255 (1) (9 SE2d 63) (1940). Statutes in derogation of common law must be strictly construed against the party asserting the right under the statute. *Corner v. State*, 223 Ga. App. 353, 355 (477 SE2d 593) (1996); *Hester v. Chalker*, 222 Ga. App. 783, 784 (476 SE2d 79) (1996). Thus, this statute shall not be broadened to extend the privilege of tort immunity that abrogates a common law cause of action by judicial construction.

This tort case for libel, invasion of privacy, and intentional infliction of emotional distress arose out of a publication for profit of an article in Atlanta Magazine regarding a Buckhead murder investigation as a garden variety defamation action. This article did not deal with a petition in the public interest before a regulatory agency, legislative body, authority, county or municipal quasi-judicial agency or publication urging legislative change. The article did not even purport to seek any legislative action by petition or urge such action.

The title of the Act, "Claim Arising From Act of Defendant Which Could Reasonably Be Construed as Act in Furtherance of Free Speech or Petition to Government for Redress of Grievances; Communications Deemed Privileged With Regard to Libel and Slander," clearly distinguishes this action from the subject of the privileged area under the Act. The legislative caption describing the Act states that the purpose of the Act was "to encourage continued participation by citizens of Georgia in matters of public significance; to encourage the valid exercise of the constitutional rights of freedom of speech and the right to petition government for a redress of grievances." The caption of an Act clearly expresses the intent of the General Assembly. *Moore v. Ray*, 269 Ga. 457, 459 (499 SE2d 636) (1998); *Moore v. Robinson*, 206 Ga. 27, 40 (6) (55 SE2d 711) (1949); *Sovereign Camp Woodmen of the World v. Beard*, 26 Ga. App. 130, 131-132 (105 SE 629) (1921).

The General Assembly of Georgia finds and declares that it is in the public interest to encourage participation by the citizens of Georgia in matters of public significance through the exercise of their constitutional rights of freedom of speech and the right to petition government for redress of grievances. The General Assembly of Georgia further finds and declares that the valid exercise of the constitutional rights of freedom of speech and the right to petition government for a redress of grievances should not be chilled through abuse of the judicial process.

OCGA § 9-11-11.1 (a) (Ga. L. 1996, pp. 260, 261, § 1).

As used in this Code section, "act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern" includes any written or oral statement, writing, or petition made before or to a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, or any written or oral statement, writing, or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.

OCGA § 9-11-11.1 (c) (Ga. L. 1996, pp. 260, 262, § 1). The rule of construction, noscitur a sociis, that the meaning of a word is derived from other words in association so that they have the similar contextual meaning applies in this case as to the type of free speech and petition entitled to protection. *Mott v. Central R.*, 70 Ga. 680 (1883); *Haddon v. Shaheen & Co.*, 231 Ga. App. 596, 597 (1) (a) (499 SE2d 693) (1998); *Saleem v. Bd. of Trustees &c. of Atlanta*, 180 Ga. App. 790, 791 (2) (351 SE2d 93) (1986); *Royal Indem. Co. v. Agnew*, 66 Ga. App. 377 (18 SE2d 57) (1941). The free speech under the Act involves public debate and petition for redress of grievances involving significant public interest as opposed to freedom of the press in general.

This Act was intended to prevent suits or countersuits by developers seeking zoning changes from intimidating homeowners from opposing their zoning application or suing to overturn zoning changes granted. It also was intended to prevent parties seeking to maintain the status quo as to matters of significant public interest from using lawsuits to intimidate interest groups petitioning the redress of grievances from legislative or executive entities. In the past, developers, which had homeowner opposition, sued the leaders

of civic associations and homeowners who opposed them to silence them by such economic threat. It was this abuse of judicial process that the General Assembly sought to prevent. *McGuire v. McGuire*, 228 Ga. 782, 785 (187 SE2d 859) (1972). It was never intended to protect the media from tort liability, which already enjoy extensive statutory and constitutional protections from tort liability. *Providence Constr. Co. v. Bauer*, 229 Ga. App. 679 (494 SE2d 527) (1997). See also Kent & Isenberg, Georgia's New Anti-SLAPP Statute, Ga. Bar J. (June 1997), p. 26.

DECIDED JULY 5, 2000.

*Neal H. Howard*, for appellant.
*Arnall, Golden & Gregory, Robert L. Rothman, Frank N. White, Roger A. Chalmers*, for appellees.