A00A2582. BROWNS MILL DEVELOPMENT COMPANY, INC.
et al. v. DENTON et al.
(543 SE2d 65)

ELDRIDGE, Judge.

Browns Mill Development Company, Inc. and Peach State Development Group, Inc. sued William Douglas Denton, individually and d/b/a DeKalb Citizens for a Better Environment, for trespass and for defamation in written opposition to its rezoning petition. The trial court dismissed the entire action for failure to verify the complaint under OCGA § 9-11-11.1, the anti-SLAPP (Strategic Litigation Against Public Participation) statute. Since (a) the defamation action arose under OCGA § 9-11-11.1, we affirm the dismissal of the defamation action; and (b) the trespass is a common law tort action that occurred outside the ambit of OCGA § 9-11-11.1, we reverse the dismissal of the trespass count.

Browns Mill had an application for rezoning before the DeKalb County Board of Commissioners. On July 28, 1999, Denton sent to the DeKalb County Board of Commissioners a memorandum opposing the rezoning application of Browns Mill and all future zoning applications by any developer, regarding negative environmental impact by development in the county.

On September 3, 1999, Denton released to the media and certain governmental officials, including the Governor, a document in opposition to "irresponsible land use patterns in DeKalb County as it affects soil and water" and targeted certain projects, i.e., Waldrop Hills owned by Peach State. In support of his claims of various environmental violations, Denton included extensive photographs. Plaintiffs' contention is that such photographs could not be made without Denton going onto the plaintiffs' property and thereby he committed an actionable trespass.

1. Plaintiffs contend that the trial court erred in dismissing its complaint for defamation and trespass under OCGA § 9-11-11.1. We agree in part and disagree in part.

In 1996, the General Assembly passed the limited anti-SLAPP statute, because it wanted to protect the constitutional right of freedom of speech as it involved the direct and indirect petition of government for redress of grievances and to avoid the chilling of such rights through abuse of the judicial process arising from the exercise of such specific rights. OCGA § 9-11-11.1; Ga. L. 1996, p. 260, § 1. Under the clear and unambiguous language of OCGA § 9-11-11.1, the General Assembly expressed the statutory meaning of an "act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern" as to petition to a "legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" in connection with an issue under consideration or review before such body by any written or oral statement, writing, or petition, which applies only to certain First Amendment rights and not all exercise of First Amendment rights. OCGA § 9-11-11.1 (b), (c); *Great Western Bank v. Southeastern Bank*, 234 Ga. App. 420, 422 (507 SE2d 191) (1998). See generally *Nairon v. Land*, 242 Ga. App. 259, 260 (529 SE2d 390) (2000). The statute deals only with "abusive litigation that seeks to chill exercise of certain First Amendment rights" based upon defamation, invasion of privacy, breach of contract, and intentional interference with contractual rights and opportunities arising from speech and petition of government. *Great Western Bank v. Southeastern Bank*, supra at 422. Thus, conduct protected within the statute is that free speech and petition of government directed to or made before a legislative, executive, or judicial body in regard to an executive, legislative, or judicial proceeding or other official proceeding authorized by law involving an issue of public interest or concern to influence its actions in such regard. OCGA

§ 9-11-11.1 (b), (c);[1] *Providence Constr. Co. v. Bauer*, 229 Ga. App. 679, 680 (1) (494 SE2d 527) (1997) (physical precedent only). See generally *Nairon v. Land*, supra at 260. The anti-SLAPP statute does not safeguard extrajudicial action that constitutes tortious misconduct to gather information for use in free speech or petition.

(a) On the face of the alleged facts of this case contained in the complaint, Denton's memorandum to the DeKalb County Board of Commissioners and his dissemination of his environmental report to the media and to governmental officials clearly come within the ambit of OCGA § 9-11-11.1, because these documents constitute a petition to an executive branch of government; made in opposition to the application for rezoning now and in the future before such body; and involved alleged issues of county-wide soil and water environmental protection and alleged violations of environmental laws in the county, which were matters of general public concern and interest. See *Providence Constr. Co. v. Bauer*, supra at 680 (written petition opposing rezoning, letters to county officials, and exercise of free speech before the county planning commission in opposition to the rezoning, as constituting a petition of government). Thus, the defamation action should have been verified under the statutory requirements of OCGA § 9-11-11.1, and such action was properly dismissed for failure to comply with this verification condition precedent to filing or within ten days of the motion to dismiss.

(b) The count of the complaint for trespass, however, does not come within OCGA § 9-11-11.1, because it did not involve free speech as part of a petition to government. See OCGA § 9-11-11.1 (b). Statutes in derogation of common law must be strictly construed against the party asserting the right under the statute. *Davis v. Emmis Publishing Corp.*, 244 Ga. App. 795, 799 (536 SE2d 809) (2000) (Eldridge, J., concurring specially); *Corner v. State*, 223 Ga. App. 353, 355 (477 SE2d 593) (1996); *Hester v. Chalker*, 222 Ga. App. 783, 784 (476 SE2d 79) (1996). Therefore, this Court may not construe this clear, plain, and unambiguous statute as including a common law action which is not prohibited expressly by the statute and does not directly involve free speech and petition. See *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981); *Davis v. Emmis Publishing Corp.*, supra. Thus, the trial court committed plain error in dismissing the trespass count for not being verified. *Wilson v. State Farm &c. Ins. Co.*, 239 Ga. App.

---

[1] *Field v. Kearns*, 43 Conn. App. 265 (682 A2d 148, 153) (1996); see also Beatty, The Legal Literature on SLAPPs: A Look Behind the Smoke Nine Years After Pring and Canan First Yelled "Fire!", 9 U. Fla. J. L. & Pub. Pol'y, 85, 86 (1997); Baruch, If I Had a Hammer: Defending SLAPP Suits in Texas, 3 Tex. Wesleyan L. Rev. 55, 57 (1996); Hargus, Civil Practice Act: Prohibit a Civil Litigant from Interposing a Claim for an Improper Purpose, 13 Ga. St. U. L. Rev. 23, 28 (1996).

168, 171-172 (520 SE2d 917) (1999).

(c) Plaintiffs contend that they do not come under OCGA § 9-11-11.1, because the statements contained in the Denton materials are false, and "there is no constitutional value in false statements of fact," i.e., defamation of a private person who has not injected himself or herself into the public eye through the news media is subject to the common law standards without First Amendment protection. *Gertz v. Robert Welch, Inc.*, 418 U. S. 323, 339-340 (94 SC 2997, 41 LE2d 789) (1974).

While this is all true and defamation may be proven at trial, the General Assembly, as a matter of Georgia public policy, has created a condition precedent for filing certain lawsuits that are based upon an alleged exercise of free speech and petition through

> any written or oral statement, writing, or petition made before or to a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, or any written or oral statement, writing, or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.

OCGA § 9-11-11.1 (c); *Providence Constr. Co. v. Bauer*, supra at 680. The General Assembly has created a procedure by which a party's fundamental constitutional rights to be afforded the opportunity to be heard and to present one's claim or defense is protected and, at the same time, is made subject to a reasonable condition precedent to avoid frivolous and abusive litigation that is intended to chill the exercise of free speech and right to petition government. OCGA § 9-11-11.1. See generally *In re Lawsuits of Carter*, 235 Ga. App. 551, 552-553 (1) (510 SE2d 91) (1998).

Clearly the memorandum of July 28, 1999, came within this statutory definition of free speech and to petition government, because it constituted a petition addressed to the DeKalb County Board of Commissioners to influence their action on a rezoning of one plaintiff's land and all similar rezoning petitions in the future and was in opposition for alleged environmental reasons with alleged county-wide effect. OCGA § 9-11-11.1 (b), (c). The September 3, 1999 Denton report was directed to the media and government personnel and officials regarding the same issues that were before the Commissioners and was intended to dramatize and indirectly influence the Commission action in regard to Denton's initial petition through negative publicity over similar development with alleged environmental problems in DeKalb County, i.e., issues of public interest and concern. All such writings came within OCGA § 9-11-11.1 (b); *Providence*

*Constr. Co. v. Bauer*, supra at 680.

If the facts and circumstances giving rise to the alleged cause of action prima facie meet the definition of OCGA § 9-11-11.1 (c), then plaintiffs and their attorney of record are mandated, as a precondition of filing an action based upon such facts, to satisfy OCGA § 9-11-11.1 (b) or risk their complaint being stricken or dismissal without prejudice.[2] A trial court, not the party, must determine if there is a bona fide action for defamation brought in good faith and not as abusive litigation to chill constitutional rights of freedom of speech and right of expression as defined by the statute. The written verification shall certify in substantial compliance that the party and the attorney of record are aware of the content of the complaint by reading it, having it read to them, or described to them; that they, under oath or affirmation, do in good faith represent to the court that to the best of their knowledge and belief formed after reasonable inquiry the complaint is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that such action is not interposed for any improper purpose, i.e., to suppress a right of free speech or to petition government, to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation. See OCGA §§ 1-3-1 (c); 9-11-11.1 (b); *Providence Constr. Co. v. Bauer*, supra at 680. In short, the verification is not to be treated as a technical trap for the dismissal of actions.

2. Plaintiffs contend that the trial court erred in failing to require Denton to meet the burden of proof that OCGA § 9-11-11.1 applied prior to dismissing their action. We do not agree.

If a plaintiff fails to verify the complaint in compliance with OCGA § 9-11-11.1, then the General Assembly has afforded such party, after notice, ten days within which to do so or risk the com-

---

[2] Dismissal of the complaint or being "stricken unless it is verified within ten days after the omission is called to the attention of the party asserting the claim" is set forth as a sanction under OCGA § 9-11-11.1 (b) and (f), but is not stated to be a dismissal on the merits. Thus, the statute treats such defect as a matter of abatement as in OCGA § 9-11-12 (b) (1) through (5) and (7), which affects the trial court's jurisdiction only and can be waived by not being timely raised. OCGA § 9-11-12 (h). Under OCGA § 9-11-41 (b), such dismissal or being stricken is in the order of "a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party [and] does [not] operate as an adjudication upon the merits unless the court in its order for dismissal specifies otherwise." "Subject matter jurisdiction is simply a power that is conferred by law upon a class of cases that authorizes a court within such class to grant a particular form of relief that might be sought by, or accorded to, a party before it." *Wallace v. Meyer*, 260 Ga. 253, 255 (5) (b) (394 SE2d 350) (1990). In this case, the dismissal is in the nature of a dismissal for lack of subject matter jurisdiction as an abatement of the action rather than an adjudication on the merits, because a condition precedent to suit has not been complied with by the plaintiff. See generally *Rehco Corp. v. California Pizza Kitchen*, 192 Ga. App. 92, 94 (383 SE2d 643) (1989); see also *Taco Bell Corp. v. Calson Corp.*, 190 Ga. App. 481, 483 (379 SE2d 6) (1989); *Empire Fire &c. Co. v. Metro Courier Corp.*, 234 Ga. App. 670, 673 (2) (507 SE2d 525) (1998).

plaint being stricken. Such requirement is not an unreasonable burden to satisfy the public policy of this State, and the risk of the complaint being stricken only comes after ten days notice that such statutory protection has been invoked; therefore, no surprise exists, creating an undue hardship on the plaintiff.

Neither party has the burden of proof on a motion to dismiss or strike under OCGA § 9-11-11.1 (b), because this issue is a matter of law for the trial court's determination based upon the pleadings, rather than upon evidence presented by either party.[3] OCGA § 9-11-11.1 (b); *Davis v. Emmis Publishing Corp.*, supra; *Providence Constr. Co. v. Bauer*, supra at 680. If on an evidentiary motion there is a showing that the verification was made in violation of the Code section, then the trial court shall impose appropriate sanctions. OCGA § 9-11-11.1 (b).

*Judgment affirmed in part and reversed in part. Blackburn, P. J., concurs. Barnes, J., concurs as to Divisions 1 (a) and (c) and 2 and concurs in judgment only in Division 1 (b).*

DECIDED NOVEMBER 28, 2000 —
RECONSIDERATION DENIED DECEMBER 8, 2000 —

*Quirk & Quirk, Neal J. Quirk, Joseph P. Farrell, Brendan H. Parnell*, for appellants.

*Smith, Gambrell & Russell, Andrew M. Thompson, Stephen E. O'Day*, for appellees.

*Gerald R. Weber, Jr., Robert Tsai*, amici curiae.

---

[3] Plaintiffs urge that this Court adopt the practice and procedure of California and Massachusetts that require the defendant to initially carry the burden of proof that the conduct comes under the protection of the anti-SLAPP statute prior to dismissing a complaint. See *Marich v. QRZ Media*, 73 Cal. App.4th 299 (86 Cal. Rptr.2d 406) (1999); *McLarnon v. Jokisch*, 431 Mass. 343 (727 NE2d 813) (2000). The simple answer is that this was not the statutory scheme adopted by the General Assembly of Georgia and that the foreign statutes, i.e., Cal. Civ. Proc. Code § 425.16 and Mass. Gen. Laws Ch. 231, § 59H, are not the same as OCGA § 9-11-11.1; thus, importing foreign case law interpreting a dissimilar foreign statute and jurisprudence can lose the true legislative intent of the Georgia General Assembly.